IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| COBRA PIPELINE CO., LTD., <br> 3511 LOST NATION ROAD, SUITE 213; <br> WILLOUGHBY, OHIO 44094 <br><br> PLAINTIFF, <br><br> v. <br><br> GAS NATURAL INC. <br> 1375 EAST 9TH ST., 20TH FLOOR; <br> CLEVELAND, OHIO 44114 <br><br> ORWELL NATURAL GAS <br> 8470 STATION STREET <br> MENTOR, OHIO 44060 <br><br> NORTHEAST OHIO NATURAL GAS CORP. <br> 8500 STATION STREET, SUITE 100 <br> MENTOR, OHIO 44060 <br><br> BRAINARD GAS CORP. <br> 8500 STATION STREET, SUITE 100 <br> MENTOR, OHIO 44060 <br><br> MARTIN WHELAN <br> 765 STUMP HOLLOW RD SE, <br> LANCASTER, OH 43130 <br><br> JOHN DOES 1-100 <br> LOCATION UNKNOWN, <br><br> DEFENDANTS. | CASE NO. 1:15-cv-00481 <br><br> JUDGE <br><br> **COMPLAINT** <br><br> **JURY DEMAND** |

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Cobra Pipeline Co., Ltd. ("Cobra") is an Ohio limited liability company with headquarters in Lake County at 3511 Lost National Road, Suite 213; Willoughby, Ohio 44094.

2. Defendant Gas Natural Inc. ("GNI") is an Ohio corporation with headquarters in Cuyahoga County at 1375 East 9th St., 20th Fl.; Cleveland, Ohio 44114. Gas Natural is the holding company for a variety of natural gas related utilities.

3. Defendant Orwell Natural Gas ("ONG") is an Ohio corporation located in Lake County at 8470 Station Street, Mentor, Ohio 44076 and a wholly-owned subsidiary of GNI.

4. Defendant Northeast Ohio Natural Gas Corp. ("NEO") is an Ohio corporation located in Lake County at 8500 Station Street, Suite 100; Mentor, Ohio 44060 and a wholly-owned subsidiary of GNI.

5. Defendant Brainard Gas Corp. ("Brainard") is an Ohio corporation located in Lake County at 8500 Station Street, Suite 100; Mentor, Ohio 44060 and a wholly-owned subsidiary of ONG.

6. ONG, NEO, and Brainard (collectively, the "Ohio Utilities") are natural gas utilities serving customers in Ohio.

7. Defendant Martin Whelan, is an individual residing in Fairfield County, Ohio at 765 Stump Hollow Road, SE; Lancaster, Ohio 43130 and held positions with, or supervisory authority over, one or more of the Ohio Utilities.

8. John Does are 1-100 are individuals or entities whose identities, location, and involvement in this matter is currently unknown.

9. Martin Whelan and John Does 1-100 were the agents, and/or officers, and/or directors of GNI and/or the Ohio Utilities and were acting in the course and scope of their employment with same at all times relevant hereto.

10. This court has jurisdiction under 28 U.S.C. § 1331. Federal question jurisdiction arises pursuant to rights implicated by the Stored Communications Act (18 U.S.C. § 2701 *et seq.*) and the Wiretap Act (18 U.S.C. § 2510 *et seq.*).

11. Venue is proper pursuant to 28 U.S.C § 1391 because at least one Defendant resides in this district and all Defendants are residents of Ohio.

## PAX OSBORNA

12. Prior to 2010, Cobra and the Ohio Utilities were companies owned primarily and/or operated by Richard M. Osborne ("Osborne"), or a trust controlled by Osborne.

13. In 2010, the Ohio Utilities were acquired by Energy West, Inc. At that time, Osborne was the chief executive officer and chairman of the board of directors of Energy West, Inc.
14. Energy West, Inc. is now known as Gas Natural Inc.
15. Prior to the acquisition of the Ohio Utilities by Energy West, Inc., Defendant Whelan was an employee of one or more companies which were owned and/or controlled by Osborne.
16. After the Ohio Utilities' acquisition, Osborne was chairman and CEO of their parent corporation, and was an officer or director of the Ohio Utilities. Osborne also owned and/or controlled Cobra.
17. Both prior to, and following, acquisition of the Ohio Utilities, employees of Cobra and the Ohio Utilities worked together symbiotically to ensure that the supply of natural gas to the Ohio Utilities' customers was uninterrupted.

## THE WAR OF THE ROSES

18. On May 1, 2014 the Board of Directors of GNI passed a resolution removing "Mr. Richard Osborne as the Chief Executive Officer and Chairman of the Board of Company and authorizes all necessary actions to remove Mr. Osborne as an officer, director or manager of any direct or indirect subsidiary of the Company", including the Ohio Utilities.
19. Since May 1, 2014, Osborne, and/or his related entities, have filed lawsuits against GNI, its directors and/or officers, and/or its subsidiaries, to vindicate his rights and defend his interests.
20. On July 30, 2014, GNI held a conference call with some of its employees, including Martin Whelan, indicating that the relationship with Osborne had been severed. The conference call also specified or intimated that continued employment with GNI was predicated on ceasing contact with Osborne.
21. That same day, July 30, 2014, Martin Whelan sent Osborne a text message reading, "I'm sorry I've been instructed not to take your calls or talk to you. I have a family. Any correspondence needs to be directed to Chris Hubert. I'm very sorry."
22. Defendants, including Martin Whelan, knew that all non-contractual relationships between Osborne and his related entities, including Cobra, had ended no later than July 30, 2014.
23. Since Osborne's removal as Chairman and CEO of GNI, there has been an increasing level of adversity and hostility toward Osborne, and his related entities, from GNI, its employees directors, officers, and its subsidiaries.

24. Despite the appearance of an attempt at separation from Osborne, GNI, its employees, and its subsidiaries have engaged in acts intended only to harass, embarrass, and/or harm Osborne or his companies, including, but not limited to, filing complaints with regulatory authorities, ignoring and/or avoiding contract obligations, and failing to cooperate even when the cooperation would result in benefits to GNI, its subsidiaries, or its customers.

## SAGEQUEST

25. Plaintiff Cobra employs the services of a fleet-management service, SageQuest, which provides to Cobra an Internet-based system to track the locations of its vehicles via Global Positioning System ("GPS") monitoring.
26. The GPS unit reports the vehicle's location as frequently as every 90 seconds, and those locations are relayed to the SageQuest data centers over the GPRS network in real time.
27. The SageQuest system allows Cobra to track its vehicles' historical and real-time locations for purposes of monitoring vehicle usage, monitoring vehicle locations, and facilitating the direction of crews to emergency areas, among other uses.
28. Cobra accesses the SageQuest system and data through Internet-enabled PCs and mobile phones.
29. Access to the Cobra SageQuest system and data is not available to the general public, but restricted to specific, dedicated login accounts.
30. Access to the Cobra SageQuest system and data is solely for the use of Cobra and any authorized licensees.
31. Defendants are not authorized licensees of the Cobra SageQuest system.

## DEFENDANTS AND SAGEQUEST

32. By virtue of Defendant Martin Whelan's relationship to Osborne-related companies, Defendant Whelan was given a login to the SageQuest system associated with the name "Marty Whelan" and associated with the email address "mwhelan@neogas.com".
33. Prior to Osborne's separation from GNI and any and all of its subsidiaries, Defendant Whelan used his SageQuest login to coordinate with Cobra to quickly and efficiently direct maintenance crews to any issues that might impair the delivery of natural gas to the Ohio Utilities' customers.
34. Prior to May 1, 2014, any access to Cobra's SageQuest system by Defendants was by consent of Cobra.

35. The authority to access SageQuest through the "mwhelan@neogas.com" login ended on May 1, 2014, when Osborne was removed as Chairman and CEO of GNI and removed as an officer, director or manager of any direct or indirect subsidiary of the Company, including the Ohio Utilities.

36. Defendants knew, or should have known, that the authority to access Cobra's SageQuest system through the "mwhelan@neogas.com" login had ended on May 1, 2014.

37. Defendants accessed Cobra's SageQuest system through the "mwhelan@neogas.com" login without Cobra's knowledge, consent, or authority, and without lawful purpose 262 separate times between June 3, 2014 and February 23, 2015.

38. At all times relevant hereto, Defendants unlawfully accessed SageQuest through the "mwhelan@neogas.com" login at the direction and with the knowledge of the Ohio Utilities and/or their corporate parent, GNI.

39. By accessing and intercepting the Cobra SageQuest system data, Defendants have violated Ohio and federal law.

## COUNT ONE: VIOLATION OF 18 U.S.C. § 2701
## STORED COMMUNICATIONS ACT

40. Plaintiff incorporates the preceding paragraphs of its Complaint as if fully rewritten.

41. At all relevant times, the Stored Communications Act (18 U.S.C. § 2701 *et seq.*) was in full force and effect.

42. Defendants knowingly, intentionally, and willfully accessed Plaintiff's SageQuest system without authorization or consent and obtained electronic information that was stored therein.

43. Defendants have actively used the information obtained to harass, embarrass, and cause harm to Cobra, Osborne, or other Osborne-related entities.

44. At all times relevant hereto, Defendants' actions were undertaken on behalf of GNI or the Ohio Utilities.

45. Defendants are directly liable for the unlawful acts, or are liable under a theory of respondeat superior.

46. Defendants' actions violated the Stored Communications Act and give rise to a claim under same.

## COUNT TWO: VIOLATION OF 18 U.S.C. § 2510
## THE WIRETAP ACT

47. Plaintiff incorporates the preceding paragraphs of its Complaint as if fully rewritten.

48. At all relevant times, The Wiretap Act (18 U.S.C. § 2510 *et seq.*) was in full force and effect.
49. Defendants intentionally intercepted, disclosed, and used Plaintiff's electronic communications in violation of 18 U.S.C. § 2511.
50. Defendants have actively used the information obtained to harass, embarrass, and cause harm to Cobra, Osborne, or other Osborne-related entities.
51. At all times relevant hereto, Defendants' actions were undertaken on behalf of GNI or the Ohio Utilities.
52. Defendants are directly liable for the unlawful acts, or are liable under a theory of respondeat superior.
53. Defendants' actions violated the Wiretap Act and give rise to a claim under same.

### COUNT THREE: CIVIL RECOVERY FOR CRIMINAL ACT

54. Plaintiff incorporates the preceding paragraphs of its Complaint as if fully rewritten.
55. In surreptitiously accessing Cobra's SageQuest system and data without the consent or authorization of Plaintiff, Defendant Whelan engaged in conduct that, if prosecuted, would constitute a felony theft offense under Chapter 2913 of the Ohio Revised Code. Specifically, Defendants knowingly gained access to or attempted to gain access to Plaintiff's SageQuest system without Plaintiff's consent, in violation of R.C. 2913.04(B).
56. Defendants are directly liable for the unlawful acts, or are liable under a theory of respondeat superior.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests:

57. Compensatory damages;
58. Statutory damages pursuant to 18 U.S.C. § 2707, 18 U.S.C. § 2520, R.C. 2307.60 and R.C. 2307.61;
59. Attorneys' fees, costs, and litigation expenses pursuant to 18 U.S.C. § 2707, 18 U.S.C. § 2520, R.C. 2307.60 and R.C. 2307.61;
60. Punitive damages pursuant to 18 U.S.C. § 2707, 18 U.S.C. § 2520, R.C. 2307.60 and R.C. 2307.61; and
61. Any other relief this Court deems just and necessary.

Respectfully submitted,


  /s/William T. Wuliger
WILLIAM T. WULIGER, ESQ. (#0022271)
Counsel for Plaintiff
Wuliger, Fadel & Beyer, LLC
1340 Sumner Avenue
Cleveland, Ohio 44115
(PH)   216-781-7777
(FX)   216-781-0621
wtwuliger@wtwuligerlaw.com

## JURY DEMAND

Plaintiff hereby requests, pursuant to Civil Rule 38(B), a trial by jury.

    /s/William T. Wuliger
WILLIAM T. WULIGER, ESQ. (#0022271)