UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
COBRA PIPELINE CO., LTD.,            :   CASE NO. 1:15-CV-00481
:
       Plaintiff,                 :
:
vs.                                  :   OPINION & ORDER
:   [Resolving Doc. 5]
GAS NATURAL, INC., ET AL.,           :
:
       Defendants.                :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      Plaintiff Cobra Pipeline Co., Ltd. ("Cobra Pipeline") sues Defendants for illegally intercepting and accessing electronic communications in violation of the Wiretap Act and the Stored Communications Act.[1] Plaintiff Cobra Pipeline also says that these actions were criminal acts under Ohio law and says that Defendants are civilly liable.[2] Defendants ask the Court to dismiss the federal claims for failure to state a claim and to decline to exercise supplemental jurisdiction over the state law claims.[3] For the reasons below, the Court **DENIES** Defendants' motion to dismiss.

## I. Factual Background

**A. General Background**

      Plaintiff Cobra Pipeline is owned and operated by Richard Osborne or a trust controlled by Richard Osborne.[4] Prior to May 1, 2014, Osborne also served as CEO and Chairman of the Board of Defendant Gas Natural, Inc. ("Gas Natural").[5] Osborne was also a director or officer of

---

[1] Doc. 1.
[2] *Id.*
[3] Doc. 5. Plaintiff has responded, Doc. 9, and Defendants have replied, Doc. 10.
[4] Doc. 1 at 2.
[5] *Id.* at 3.

Case No. 1:15-CV-00481
Gwin, J.

Defendants Orwell Natural Gas, Northeast Ohio Natural Gas Corp., and Brainard Gas Corp. All are subsidiaries of Gas Natural.[6] The Court follows the parties' lead and refers to these three Defendants collectively as the "Ohio Utilities."

On May 1, 2014, Gas Natural's Board of Directors passed a resolution removing Osborne from his positions as CEO and Chairman of the Board of Gas Natural, as well as from his officer and director positions with the Ohio Utilities.[7] Before Osborne's removal, Plaintiff Cobra Pipeline had worked together with Defendants Gas Natural and the Ohio Utilities in various ways.[8] After Osborne's removal, Osborne and Plaintiff Cobra Pipeline's relationship with Defendants Gas Natural and the Ohio Utilities has become increasingly contentious. For example, Osborne and related entities have filed lawsuits against Defendant Gas Natural and related entities, and Gas Natural has directed some of its employees not to have further contact with Osborne on pain of termination.[9]

**B. The SageQuest System**

Plaintiff Cobra Pipeline uses a system called SageQuest to track its service trucks.[10] This system sends GPS data from each vehicle to SageQuest data centers approximately every ninety seconds.[11] Plaintiff Cobra Pipeline is then able to view real-time and historical locations of its trucks on a password-protected website.[12] The website also allows Cobra Pipeline to monitor

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* at 4.
[11] *Id.*
[12] *Id.*

Case No. 1:15-CV-00481
Gwin, J.

information such as "vehicle usage."[13]

Plaintiff Cobra Pipeline had given Defendant Martin Whelan, who worked for at least one of Defendants Gas Natural or the Ohio Utilities, a login to its SageQuest information to facilitate the various companies' cooperation.[14] Before May 1, 2014, when Osborne was removed from his Gas Natural and Ohio Utilities positions, Whelan accessed Plaintiff Cobra Pipeline's SageQuest website with the consent of Plaintiff Cobra Pipeline.[15] But Plaintiff Cobra Pipeline says that after that date, Defendant Whelan knew or should have known that Whelan's consent had been revoked.[16] Whelan continued to use his login to access the website after this date.[17] Plaintiff Cobra Pipeline says that by doing so, he violated the Wiretap Act and the Stored Communications Act.

## II. Law and Analysis

### A. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[18] The plausibility requirement is not "akin to a probability requirement," but requires "more than a sheer possibility that the defendant has acted unlawfully."[19]

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short and plain statement of the claim showing that the pleader is

---

[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.* at 5.
[17] *Id.*
[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[19] *Id.*

Case No. 1:15-CV-00481
Gwin, J.

entitled to relief."[20]  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[21]  In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations."[22]

**B.    Stored Communication Act and Wiretap Act**

Plaintiff Cobra Pipeline alleges violations of both the Stored Communications Act and the Wiretap Act.  As relevant here, the Stored Communications Act makes it illegal to "intentionally access[] without authorization a facility through which an electronic communication service is provided . . . and thereby obtain[] . . . a wire or electronic communication while it is in electronic storage . . . ."[23]  Similarly, the Wiretap Act generally prohibits the interception of "wire, oral, or electronic communication[s]," as well as the disclosure or use of illegally intercepted communications.[24]  Both statutes authorize civil causes of action.[25]

With their motion to dismiss, Defendants have challenged only whether the tracking information counts as "electronic communications" or not.  If it does, then the motion to dismiss the federal claims must be denied.  But if not, then it must be granted.

The term "electronic communication" is defined the same way in both statutes.  It means "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects

---

[20] Fed. R. Civ. P. 8(a)(2).
[21] *Iqbal*, 556 U.S. at 678-79 (citations omitted).
[22] *Id.*
[23] 18 U.S.C. § 2701(a).
[24] 18 U.S.C. § 2511(1).
[25] *Id.* § 2707 (Stored Communications Act); *id.* § 2520 (Wiretap Act).

Case No. 1:15-CV-00481
Gwin, J.

interstate or foreign commerce, but does not include . . . any communication from a tracking device (as defined in [18 U.S.C. § 3117]).”[26] In turn, a "tracking device" is "an electronic or mechanical device which permits the tracking of the movement of a person or object."[27]

Defendants argue–and Plaintiff Cobra Pipeline does not contest–that GPS communications sent from the trucks themselves to the SageQuest data centers are within the "tracking device" exclusion and are therefore not "electronic communication[s]" under the Stored Communications Act or the Wiretap Act.

But Plaintiff Cobra Pipeline says that the communications from the GPS devices themselves to the SageQuest data center are not the basis for its lawsuit. Rather, Plaintiff Cobra Pipeline argues that the data center "subsequently interprets and contextualizes the data for presentation to subscribers via a dedicated website."[28] And then, Plaintiff Cobra Pipeline argues, the data center sends this "interpret[ed] and contextualize[d]" information on to the password-protected website. It is these arguably intercepted communications–between the data center and the website–that Plaintiff Cobra Pipeline relies on to support its claims.[29]

This is a close case, and one made harder by the difficulty of applying statutes first created without the Internet in mind.[30] Defendants say that they are unaware of any case in which interpreting or contextualizing information from an excluded communication brought a transfer of

---

[26] *Id.* § 2510(12) (emphasis added) (Wiretap Act); *id.* § 2711 (incorporating the Wiretap Act's definitions for purposes of the Stored Communications Act).
[27] *Id.* § 3117(b).
[28] Doc. 9 at 6.
[29] *Id.*
[30] *Cf. Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 874 (9th Cir. 2002) ("We observe that until Congress brings the laws in line with modern technology, protection of the Internet and websites such as Konop's will remain a confusing and uncertain area of the law."); *Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*, 961 F. Supp. 2d 659, 666 n.2 (D.N.J. 2013) ("Most courts, including this one, would prefer that Congress update the [Stored Communications Act] to take into account the invention of the Internet." (citing *Konop*)).

Case No. 1:15-CV-00481
Gwin, J.

data within the scope of the Stored Communications Act or Wiretap Act.[31] But the complaint alleges both (1) that separate communications from the data center to the password-protected website occurred and (2) that these communications contained not only location data directly traceable to the GPS devices, but also information on, for example, "vehicle usage,"[32] which the opposition to the motion to dismiss explains can include such information as "hours worked [and] average work start time."[33]

These allegations are–just barely–enough to survive Defendants' motion to dismiss. The complaint alleges that separate communications existed and had sufficient non-location content that it cannot be said that they were "from a tracking device." At this stage, there is insufficient information about how the SageQuest system works and about the nature of the information involved to make these allegations implausible. In the context of this case, these issues require the development of a factual record and are more appropriately resolved at summary judgment or trial.

### III. Conclusion

For the above reasons, the Court **DENIES** Defendants' motion to dismiss.[34]

IT IS SO ORDERED

Dated: May 26, 2015         s/      *James S. Gwin*
                            JAMES S. GWIN
                            UNITED STATES DISTRICT JUDGE

---

[31] Doc. 10 at 2-3.
[32] Doc. 1 at 4.
[33] Doc. 9 at 6.
[34] Defendants have also asked that the Court decline to exercise supplemental jurisdiction over the state law claim if the Court grants Defendants' motion to dismiss the federal claims. Having concluded that Defendants' motion to dismiss the federal claims should be denied, the Court will exercise supplemental jurisdiction over Plaintiff Cobra Pipeline's state law claim.