UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------------
                                        :

| | |
|---|---|
| COBRA PIPELINE CO., LTD., | CASE NO. 1:15-CV-00481 |
| Plaintiff, | |
| vs. | OPINION & ORDER |
| | [Resolving Doc. 19, 21] |
| GAS NATURAL, INC., ET AL., | |
| Defendants. | |

------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Cobra Pipeline Co., Ltd. ("Cobra Pipeline") sues Defendants for illegally intercepting and accessing electronic communications in violation of the Stored Communications Act and the Wiretap Act.[1] Plaintiff Cobra Pipeline also says that these actions were criminal acts under Ohio law and says that Defendants are civilly liable as a result.[2] The parties have cross moved for summary judgment.[3]

Plaintiff seeks partial summary judgment, and asks the Court to find that Defendants violated the Stored Communications Act. Defendants ask the Court for summary judgment as to all claims brought by Plaintiff. For the reasons below, the Court **DENIES** Plaintiff's motion for summary judgment, and **GRANTS** Defendants' motion.

---

[1] Doc. 1 at ¶¶ 40-53; 18 U.S.C. § 2701 *et seq.* (The Stored Communications Act); 18 U.S.C. § 2510 *et seq.* (The Wiretap Act);

[2] *Id.* at ¶¶ 54-56.

[3] *See* Doc. Nos. 19, 21, 23, 24, 25, 26.

Case No. 1:15-CV-00481
Gwin, J.

## I. Factual Background

**A. Relationship Between Cobra Pipeline and the Ohio Utilities**

Plaintiff Cobra Pipeline is a gas transmission pipeline which transports natural gas from producers to customers.[4] Richard Osborne owns and operates Plaintiff Cobra Pipeline.[5] Before May 1, 2014, Osborne also worked as a senior executive for Defendants Gas Natural, Inc., Orwell Natural Gas, Northeast Ohio Natural Gas Corp., and Brainard Gas Corp. (collectively "Ohio Utilities").[6] On May 1, 2014, Richard Osborne was terminated from his various roles at the Ohio Utilities. Although Osborne was fired from these entities, Osborne maintained control over Cobra Pipeline.

Before Osborne's removal, Plaintiff Cobra Pipeline had worked together with Defendants Gas Natural and the Ohio Utilities in various ways.[7] After Osborne's removal, Osborne and Plaintiff Cobra Pipeline's relationship with Defendants Gas Natural and the Ohio Utilities has become increasingly contentious.

As relevant for the purposes of this motion, the Ohio Utilities employed Defendant Martin Whelan.[8] Before the May 1, 2014 Cobra Pipeline and Ohio Utility split, Cobra gave Whelan a login to Cobra's fleet tracking software SageQuest because Cobra Pipeline and the Ohio Utilities

---

[4] Doc. 21 at 3.
[5] *Id.* at 3-4.
[6] *Id.* at 4; Doc. 19 at 3.
[7] Doc. 19 at 3; Doc. 21 at 4.
[8] Doc. 21 at 3.

-2-

Case No. 1:15-CV-00481
Gwin, J.

coordinated services before the May 1, 2014 split.[9/]

But even after May 1, 2014, as the relationship between the institutions deteriorated, Defendant Whelan and his subordinate Jeffrey J. Heindik ("Heindik") continued to access the Plaintiff Cobra Pipeline SageQuest website using the login.[10/]  Defendants state that they used the login to monitor the Cobra's fleet of trucks "to protect against Mr. Osborne's increasingly erratic conduct."[11/]

Plaintiff Cobra Pipeline says that Whelan and the Ohio Utilities' access of SageQuest violated the Stored Communications Act and the Wiretap Act.[12/]  Cobra Pipeline also alleges that the acts, if prosecuted, would constitute criminal violations of Ohio Revised Code § 2913.04(B).[13/]  As a result, they seek a civil recovery for the alleged criminal act.[14/]  Plaintiff seeks partial summary judgment, asking the Court to find that Defendants violated the Stored Communications Act. Defendants ask the Court for summary judgment as to all claims brought by Plaintiff.

**B. The SageQuest System**

Plaintiff Cobra Pipeline uses a system called SageQuest to track its fleet of service trucks.[15/] The parties do not dispute that this system utilizes GPS data sent from each truck in the fleet.[16/]  This data is initially routed through a cellular communication tower, and is then processed in SageQuests'

---

[9/]Doc. 19 at 3-4; Doc. 21 at 5-6.
[10/]Doc. 21 at 5.
[11/]Doc. 19 at 5.
[12/]Doc. 1 at  ¶¶ 40-53.
[13/]*Id.* at ¶ 55.
[14/]*Id.* at ¶¶ 54-56.
[15/]Doc. 19 at 1; Doc. 21 at 5.
[16/]Doc. 23-2 at 8; Doc. 21-1 at 3.

Case No. 1:15-CV-00481
Gwin, J.

Data Center or Operation Center.[17]  The Operation Center centralizes the data and makes it available to the end-user through a web portal.[18]

This website is accessible only by the entry of a username and password.[19]  The parties agree that the website "presents" continuously-updated information from the fleet of vehicles to the user.[20]

The user-facing site utilizes the GPS information as part of a broader fleet management tool.[21]  Users can see individual vehicles on a map, as well as access vehicle data for the previous twenty-four hours.[22]  The user-facing site also provides a street view of any particular location, a function to send a "SMS" message to the driver, access to the truck's VIN Number and current driver, and access to a "Control Center" to see "additional information, such as idle duration, vehicle activity, mileage, start time . . . , [and] speeding violations."[23]

Cobra Pipeline has a data storage contract with SageQuset. Upon logging into the system, a user can review historical data for the fleet going back three months.[24]  Upon request, SageQuest can reproduce data older than three months.[25]

---

[17]*Id.* The parties differ on their preferred terminology. The Court will call this data collection point the Operation Center.

[18]Doc. 23-2 at 6; Doc. 21-1 at 4.

[19]*Id.*

[20]Doc. 21-1 at 10 (SageQuest "aggregates, interprets and presents information from GPS units, along with other relevant information related to vehicles used by a company."); 23-2 at 7 (SageQuest "presents information to subscribers related to their fleet of vehicles.").

[21]*Id.*

[22]Doc .23-2 at 6; Doc. 21-1 at 4-6.

[23]Doc. 23-2 at 6; *see also* Doc. 21-1 at 4-6. Neither party offers evidence that Defendants' use of the Sage Quest system involved sending or receiving text messages. Neither party offers evidence that Defendants' use of the Sage Quest system involved the interception of alerts or information intended for other recipients. Facts such as these could have added substantial complexity as to whether the actions fell under the protections of the Stored Communications Act or the Wiretap Act. However, there is no genuine dispute as to whether such circumstances occurred. They did not.

[24]Doc. 19-5 at 61 (Carothers Dep.).

[25]*Id.*

Case No. 1:15-CV-00481
Gwin, J.

The parties have not presented evidence that any aspect of the website changes when multiple people are logged in, or when one user logs in prior to another user.  However, it is possible to generate a historical "user activity report" which identifies the time of a particular user's unique log-ins.[26]

## II. Law and Analysis

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[27] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[28]  Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[29]  The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[30]  But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[31]

Ultimately, the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[32]  Failure to oppose the moving party's arguments does not automatically result in the

---

[26]Doc. 21-2.

[27]*Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. Pro. 56(a)).

[28]*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[29]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[30]*Id.* at 586.

[31]*Killion*, 761 F.3d at 580 (internal citation omitted).

[32]*Martingale LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004)

Case No. 1:15-CV-00481
Gwin, J.

motion being granted.  Courts must still, at a minimum, examine the movant's motion for summary

judgment to ensure that it has met the burden imposed Rule 56.  "The moving party may make this

showing by demonstrating the absence of evidence to support one of the essential elements of the

nonmoving party's claim."[33/]


**B.     Stored Communication Act**

Plaintiff Cobra Pipeline alleges violations of the Stored Communications Act ("SCA").  As

relevant here, the SCA makes it illegal to "intentionally access[] without authorization a facility

through which an electronic communication service is provided . . . and thereby obtain[] . . . a wire

or electronic communication while it is in electronic storage . . . ."[34/]

**1. Covered Communications: Legal Standard**

Under the Stored Communications Act, this Court first considers whether the electronic

materials that the Defendant accessed are covered under the Act.  The SCA does not provide a

remedy for unauthorized access to *all* digital materials.  As the name implies, the statute only covers

actions when a party obtains an electronic communication "while it is in electronic storage."[35/]  The

term "electronic storage" is defined in the statute as:

> (A) any temporary, intermediate storage of a wire or electronic communication
> incidental to the electronic transmission thereof; and

> (B) any storage of such communication by an electronic communication service for

---

[33/] *Marie v. Am. Red Cross*, 771 F.3d. 344, 351 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 322-25.)
[34/] 18 U.S.C. § 2701(a).
[35/] *Id.*; *see also* S.Rep.No. 99-541 at 36 ("Subsection 2701 also provides that the offender must obtain, alter, or prevent authorized access to a wire or electronic communication while it is in electronic storage . . . in order to commit a violation under the subsection.").

Case No. 1:15-CV-00481
Gwin, J.

purposes of backup protection of such communication.[36/]

With the Act, Congress intended a "limited" definition of Subsection (A).[37/] For example, "[i]t appears that the section is specifically targeted at communications temporarily stored by electronic communications services incident to their transmission—for example, when an email service stores a message until the addressee downloads it."[38/] By the same reasoning, messages posted to an "electronic bulletin board" are not in "electronic storage." When a website user reads the messages posted to an electronic bulletin board, he is not reading materials that are "waiting to be transferred to the final destination."[39/] The messages are instead presented on the website, and already at their destination.[40/]

---

[36/]18 U.S.C. § 2510(17) ((Wiretap Act); 18 U.S.C. § 2711 (incorporating the Wiretap Act's definitions for purposes of the Stored Communications Act).

[37/]*In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp.2d 497, 512 (2001) (collecting citations).

[38/]*Id.*

[39/]*Snow v. DirectTV*, 2:04-cv-515, 2005 WL 1226158 at *3 (M.D. Florida May 9, 2005) (The SCA did not apply to unauthorized access to a private website where Plaintiff posted information in opposition to corporate targets such as DirectTV: "The website is the final destination for the information posted on a bulletin board."); *see also* U.S. Dep't of Justice, *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations*, Chapter III, § A (2009), *available at* http://www.justice.gov/criminal/cybercrime/docs/ssmanual2009.pdf [hereinafter "U.S. Dep't of Justice, *Electronic Evidence*"].

[40/]Plaintiff points to *Konop v. Hawaiian Airlines*, 302 F. 868 (9th Cir. 2000), for the proposition that the SCA was intended to cover postings to private electronic bulletin boards. This reading is not correct. *Konop* did deal with an electronic bulletin board—a private website where the plaintiff, a pilot at the defendant airline, posted information about his employer. However, the parties stipulated that the messages were in "electronic storage" when the airline executives accessed them on the website. The definition of "electronic storage" was not before the court.

The *Konop* court included "private electronic bulletin boards" in its discussion of the types of communications that Congress "wanted to protect" in passing the SCA. *Id.* at 875. However, this Court disagrees with the *Konop* court's reading of the legislative history in reaching that conclusion. The House and Senate reports generally contrast private e-mail, which would be covered, with *public* bulletin boards, which would *not* be covered. H.R. Rep. No 99-647 at 64 (1986) ("It is not the Committee's intent to hinder the development or use of "electronic bulletin boards" or other comparable services. The Committee believes that where communication are readily accessible to the general public, the send has, for purposes of Section 2701(a), extended an "authorization" to the public to access those communications."); S. Rep. No. 99-541 at 36 (1986) ("This subsection does not prevent broad authorizations to the general public to access such a facility. The bill does not for example hinder the development or use of 'electronic bulletin boards' or other similar services where the availability of information about the service, and the readily accessible nature of the service are widely known and the service does not require any special access code or warning to indicate that the information is private. To access a communication in such a public system is not a violation of the Act, since the

(continued...)

-7-

Case No. 1:15-CV-00481
Gwin, J.

Under Subsection (B), a communication may also be covered by the statute if it is in "any storage . . . by an electronic communication service for purposes of backup protection of such communication."[41]

The scope of this provision is disputed.  Some courts have taken a narrow view, holding that "backup" refers to copies made "in the event the system crashes before transmission is complete."[42]  As a result, messages "that are in post-transmission storage, after transmission is complete, are not covered by part (B) of the definition."[43]

In contrast, the Ninth Circuit in *Theofel v. Farey-Jones*[44] departed from this line of cases and identified a broader approach.  The *Theofel* court held that Subsection (B) applies to backup storage regardless of whether it is in intermediate storage or in post-transmission storage.  So long as the messages function as a back-up — even for the user, rather than the internet service provider — then the Ninth Circuit found that it fell within the statutory definition.  Under this interpretation, reading an already-opened e-mail still constitutes accessing a communication in "electronic storage."  The already-opened e-mail is a backup.

The U.S. Government has opposed the broader approach taken by the Ninth Circuit in *Theofel*, stating that the court's approach "confuses 'backup protection' with ordinary storage of a

---

[40](...continued)
general public has been 'authorized' to do so by the facility provider.")
    The legislative history does not speak as to how Congress intended to handle a *private* bulletin board, where postings could be seen by multiple individuals at once, but each individual needed authorized access.
    [41]18 U.S.C. § 2510(17) (emphasis added).
    [42]U.S. Dep't of Justice, *Electronic Evidence* at 124-25 (collecting citations); Orin S. Kerr, *A User's Guide to the Stored Communications Act*, 72 Geo. Wash. L. Rev. 1208, 1215-17 (2004) (same).
    [43]*Fraser v. Nationwide Mut. Ins. Co.*, 135 F. Supp. 2d 623, 636 (E.D. Pa. 2001), *rev'd in part on other grounds* 352 F.3d 107, 114 (3d Cir. 2004).
    [44]359 F.3d 1066 (9th Cir. 2004).

Case No. 1:15-CV-00481
Gwin, J.

file." Sister district courts in the Sixth Circuit have taken both approaches in addressing cases

regarding already-opened e-mail.[45/]

### 1. Covered Communications: Analysis

Regardless of the approach the Court takes, the electronic materials accessed by Defendant

were not in "electronic storage" as defined in the SCA. There is no genuine dispute as to any issue

of material fact regarding the functioning of the SageQuest website. The website "presents"

information to any user who logs in.

The SageQuest system does not fall under Subsection (A): "any temporary, intermediate

storage of a wire or electronic communication incidental to the electronic transmission thereof."

When the user views the fleet data, the communications have already reached their destination. The

communications are not "in transit." SageQuest is more akin to an electronic bulletin board. The

data is not being sent to a particular person, and the data is not being accessed during a transmission

to any user. Any user — whether authorized or not — is reviewing SageQuest's fleet data after it

has reached its final destination. Thus, the information accessed is not a communications cannot

have been in storage under Subsection (A).

The SageQuest system does not fall under Subsection (B) either: "any storage . . . for

purposes of backup protection of such communication." Defendants' actions, as a matter of law,

cannot constitute access to communications in storage "for purposes of backup protection."

Defendants accessed SageQuest's primary website. Although Defendants had access to

---

[45/] *Carinal Health 414 , Inc. v. Adams*, 582 F. Supp. 2d 967, 976 n. 2 (M.D. Tenn. 2008) (following *Theofel*); *Bailey v. Bailey*, No. 07-11672, 2008 WL 324156, *6 (E.D. Mich. Feb. 6, 2008) (same); *Lazette v Kulmatycki*, 949 F. Supp.2d 748 (N.D.Ohio 2013) (adopting the narrower approach in *Fraser*).

Case No. 1:15-CV-00481
Gwin, J.

historical fleet data, the time range of fleet data available to Defendant was predetermined.  The

history SageQuest provided was part of the service sold by SageQuest.  Even under the Ninth

Circuit's broad approach in *Theofel*, the storage must be a secondary copy, kept for the "purposes

of backup."  Here, the Defendants did not access any backup copy.  Instead, they accessed the main

SageQuest website.

Consider, for example, if the truck fleet data were kept in a paper form.  The website is

similar to a copy available to authorized users in the SageQuest lobby.  A backup copy is similar to

a secondary copy kept in a safety deposit box at another location.  Reading the lobby paper copy is

not equivalent to reading the separate location's backup copy.  In turn, accessing the SageQuest

website is not equivalent to accessing the fleet data while it is storage "for purposes of backup

protection."

Plaintiff's arguments to the contrary fail.  First, Plaintiff relies on misguided citations.  The

Plaintiff relies on the Ninth Circuit's *Konop* holding.[46]  However, as described above,[47] the parties

in *Konop* stipulated that the communications were in electronic storage.  There is no substantive, let

alone precedential, weight to the *Konop* case.

The Plaintiff also relies on District of Massachusetts decision in *Cheng v. Romo*.[48]  *Cheng*

merely rehashes the narrow versus broad interpretation of Subsection (B) described above.  In

particular, *Cheng* addresses the subject of reviewing already-opened e-mails, and sheds no more light

on the issue than the cases from our sister district courts in this Circuit.  The SageQuest website is

---

[46] 302 F. 868 (9th Cir. 2000).
[47] *Supra*, note 40.
[48] 11-cv-10007. 2013 Wl 6814691 (Dec. 20, 2013).

-10-

Case No. 1:15-CV-00481
Gwin, J.

not analogous to an e-mail service.  There is no status of "opened" or "read" for the SageQuest fleet

data.  The issue is whether Defendants accessed communications stored "for purposes of backup

protection."  Defendants did not.

Second, Plaintiff cites to its expert, who writes that "[t]he electronic communications such

as VIN numbers, Drivers and Other Vehicle data is in electronic storage at SageQuest's operations

center."  First, an expert cannot opine on a question of law.[49]  Even if this expert could give opinions

on legal issues, the expert is giving an opinion on a different question: whether communications

were in storage *at SageQuest*.  The issue here is whether communications were in storage when

viewed on the user-facing website.  As described above, the communications were not.

Third, Plaintiff points to the SageQuest storage plan that allowed users to view both historical

and contemporaneous data.  Plaintiff argues that the evidence of a three-month historical data plan

"unequivocally demonstrate[s] that the electronic communications that were transferred to

SageQuest and presented to the user by the website are also stored for backup purposes."[50]  Here

Plaintiff identifies the weakness in its own argument.  The information at SageQuest may have

"also" been stored for backup purposes.  But Defendant did not access these copies while they were

"also" being stored for backup purposes.  Instead, the Defendant accessed the primary means for

accessing the data: the user-facing web portal.  Any data viewed through that web portal was not

being kept as a back-up.  Merely because the data presented on the website included historical

information does not render the website a means of storage covered under Subsection (B).

The actions of the Ohio Utilities may raise legitimate privacy concerns, but they are not the

---

[49]*Chavez v. Carranza*, 559 F.3d 486, 498 (6th Cir. 2009).
[50]Doc. 26 at 12.

Case No. 1:15-CV-00481
Gwin, J.

privacy concerns that are protected under the Stored Communications Act.  The communications

accessed by Defendants were not in "electronic storage" for the purposes of this statute.[51]

Accordingly, the Court grants summary judgment to Defendants on Count I.   The Court denies

Plaintiff's motion for summary judgment as to Count I.


**C. The Wiretap Act**

Plaintiffs allege that Defendants "intentionally intercepted, disclosed, and used Plaintiff's

electronic communications in violation of 18 U.S.C. § 2511."[52]  As relevant for Plaintiff's claim,

18 U.S.C. § 2511 gives a cause of action against any person who "intentionally intercepts, endeavors

to intercept, or induces any other person to intercept or endeavor to intercept, any wire, oral, or

electronic communication."   The Sixth Circuit has not directly addressed the definition of

"interception." However, other Circuits have consistently held that accessing a communication does

not violate the Wiretap Act unless the access is "contemporaneous" with a transmission to an

intended recipient.[53]  "The courts adopting this holding have reasoned that the term 'intercept' as

defined in the Wiretap Act requires interception of the communication either before it reaches the

intended recipient, or 'contemporaneous with transmission.'"[54]

Defendants can succeed on summary judgment if they can show that Plaintiff has failed to

meet its burden as to an essential element of their case.  Despite extensive briefing on whether

Defendants' access was "authorized" and whether Defendants accessed "electronic communications"

---

[51] Because Plaintiff's SCA claim fails at this threshold inquiry, the Court does not reach the question of whether the Defendants accessed an "electronic communication" or whether such access was unauthorized.

[52] Doc. 1 at ¶ 49.

[53] *See Garback v. Lossing*, 09-cv-12407, 2010 WL 3733971 (E.D. Mich. Sept. 20, 2010) (gathering citations)

[54] *Luis v. Zang*, 11-cv-884, 2013 WL 811816 at *3 (S.D. Ohio Mar. 5, 2013).

Case No. 1:15-CV-00481
Gwin, J.

as defined under the statute, Plaintiff has offered no facts to support the threshold issue in the

Wiretap Act: that the communications were "intercepted."[55/]

Taking all reasonable inferences in favor of the Plaintiff, Plaintiff cannot show as a matter

of law that the Defendant's use of the SageQuest logon constituted "interception."  Interception

requires a transmission of communications between two points, with some interruption during or

contemporaneous with that transmission. Here, Defendants' use of SageQuest did not interrupt an

otherwise-occurring transmission.  There was no other intended recipient.  When Whelan and

Heidnik accessed SageQuest, they were accessing the information at the expected end-point of the

transmission. Plaintiff has offered no evidence which could establish that any communications were

"intercepted."  Accordingly, the Court grants summary judgment to Defendants as to the Wiretap

Act claim.

**D. State Law Claim for "Civil Recovery For Criminal Act"**

Plaintiff states that Defendants' conduct, if prosecuted, "would constitute a felony theft

offense under Chapter 2913 of the Ohio Revised Code."[56/]  As a result, Plaintiff seeks statutory

damages, punitive damages, and fees pursuant to Ohio Revised Code §§ 2307.60 and 2307.61 for

"civil recovery for a criminal act."[57/]

Plaintiff misunderstands the purpose of Sections 2307.60 and 2307.61.  These sections do

not create a separate civil cause of action for every corresponding criminal statute.  "Rather, Ohio

---

[55/]As pointed out by Defendants in their reply brief, Plaintiff does not even address the issue in their opposition
to Defendants' motion for summary judgment.

[56/]Doc 1 at ¶ 55.

[57/]Doc 1 at ¶¶ 58-60.

Case No. 1:15-CV-00481
Gwin, J.

Revised Code §§ 2307.60 and 2307.61 set forth certain evidentiary rules for admitting facts of

conviction and certain damages that a civil litigant may recover *if a cause of action otherwise*

*exists*."[58] Sections 2307.60 and 2307.61 were merely meant to codify the common law rule that a

civil action does not merge into a criminal prosecution for the same acts. "Hence, a separate cause

of action must be available before this section is invoked."[59]

Plaintiff has only pointed to a criminal statute that—if prosecuted—would give rise to

criminal liability. As a matter of law, this is insufficient for a civil claim to survive.[60] Plaintiff has

not identified a corresponding state civil statute. The Court grants Defendants' motion as to the

claim for "Civil Recovery For Criminal Act."

## III. Conclusion

Plaintiff has raised colorable concerns regarding Defendants' use of the SageQuest

system after May 1, 2014. However, the Plaintiff is the master of the complaint. And Plaintiff

here chose to plead its case under ill-fitting statutes. The conduct at hand is not covered under

the Stored Communications Act or the Wiretap Act. And Plaintiff has not identified a civil claim

under Ohio Law through which to seek relief. For the above reasons, the Court **DENIES**

---

[58] *Jasar Recycling Inc. v. Major Max Mgmt. Corp.*, 8-cv-2830, 2010 WL 395212 (N.D. Ohio Jan. 22, 2010) (emphasis added); *see also Simpkins v. Grace Brethren Church of Del.*, 16 N.E.3d 687, 711 (Ohio Ct. App 2014) ("R.C. 2307.60 does not establish a separate cause of action and is simply a codification of the Ohio common law rule that a civil action is not merged into a criminal prosecution for the same acts that form the basis for the civil action."); *McNichols v. Rennicker*, 2002-ap-04-026 2002 WL 31883700 (Ohio Ct. App. Dec. 18, 2002) ("A separate civil cause of action must be available to bring a civil claim based upon a criminal act").
[59] *Edwards v. Madison Twp.*, 97-APE-06-819, 1997 WL 746415 (Ohio Ct. App. Nov. 25, 1997).
[60] A sister district court has previously allowed a similar claim under Ohio Revised Code §§ 2307.60, 2307.61, and 2913.04(B) to survive a motion to dismiss alongside Stored Communications Act claims. *Lazette*, 949 F.Supp.2d at 761-62. In reaching a different conclusion, this Court notes that this discussion comes at a later stage of the case and that Plaintiff had been unable to identify an appropriate civil statute under Ohio law. Moreover, the *Lazette* court did not address the issue of whether 2307.60 and 2307.61 created separate causes of action. The weight of authority under Ohio law is that they cannot.

Case No. 1:15-CV-00481
Gwin, J.

Plaintiff's motion for partial summary judgment and **GRANTS** Defendants' motion for summary

judgment in full.

      IT IS SO ORDERED


Dated: September 17, 2015                s/       *James S. Gwin*
                                        JAMES S. GWIN
                                        UNITED STATES DISTRICT JUDGE